UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TOMMY LEE TAYLOR,<br><br>Defendant. | Case No. 4:23-cr-00139-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Tommy Lee Taylor's Motion to Dismiss (Dkt. 169). The Court held oral argument on October 2, 2025, and now issues its decision. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

Mr. Taylor and four codefendants were indicted in the District of Idaho in May 2023 on charges of conspiracy and possession with intent to distribute controlled substances. At the time, Mr. Taylor was jailed in San Joaquin County, California, awaiting the resolution of state charges of identity theft and shoplifting. *See* Dkt. 174-3. He also had an indictment from September 2022 pending in Stanislaus County, California, on charges of attempted murder.

In June 2023, Mr. Taylor received a sentence of three years of incarceration

with one year suspended in the San Joaquin County case. About a week after that sentencing, Mr. Taylor's California public defender contacted the U.S. Attorney for the District of Idaho to request that Mr. Taylor be transported to Idaho for the resolution of the federal charges in the present case. In August 2023, Mr. Taylor himself wrote to the Court asking to be transferred and asserting his speedy trial rights. Dkt. 66. In that letter, he noted that jail officials had refused to issue the certificate required by the Interstate Agreement on Detainers (IAD). The next month, the Government sought, and the Court issued, a writ of habeas corpus *ad prosequendum*. The writ, however, was returned unexecuted on September 11, 2023, with a notation that Mr. Taylor was not at the facility. Dkt. 76.

Mr. Taylor had been transferred to the Stanislaus County Jail to await trial on the attempted murder charges. That case resolved on December 2, 2024, when Mr. Taylor was convicted of Willful Discharge of a Firearm and sentenced to three years in prison. While incarcerated in Stanislaus County, he did not make any further efforts to obtain transfer to the District of Idaho.

On December 20, 2024, Mr. Taylor appeared before a federal magistrate in California on the federal warrant in the present case. This Court received Rule 5(c)(3) documents on January 6, 2025, and arraigned Mr. Taylor on January 30, 2025. He subsequently moved for two continuances before filing the present motion seeking dismissal of the indictment with prejudice due to violations of the

Interstate Agreement on Detainers.

## ANALYSIS

The Interstate Agreement on Detainers is a compact among 48 states and the federal government adopted to encourage the prompt and orderly resolution of detainers. 18 U.S.C. App. § 2 [hereinafter IAD]; *see Carchman v. Nash*, 473 U.S. 716, 720 (1985). Under Article III of the IAD, when a prisoner with a detainer in a member jurisdiction requests disposition of those charges, that jurisdiction must bring the prisoner to trial within 180 days. *Carchman v. Nash,* 473 U.S. 716, 721 (1985). The state in which the prisoner is initially serving a sentence is termed the "sending state," and the state with the subsequent detainer is the "receiving state." *United States v. Pursley*, 474 F.3d 757, 762 (10th Cir. 2007). To trigger the IAD's protections, the defendant must make a written request to the prosecutor and the court in the receiving state. The defendant must give that request to a prison official, who then forwards it to the receiving jurisdiction along with a certificate with information about the prisoner's sentence. IAD art. III(a)-(b). A violation of the IAD results in dismissal with prejudice of the pending charges.

Mr. Taylor argues that the District of Idaho violated the IAD by not bringing him to trial within 180 days of his request for disposition. His motion to dismiss raises three questions. First, does the IAD applies to this situation, where he was sentenced in California on some charges but awaiting trial in others? Second, if so,

did Mr. Taylor comply with the IAD's procedural requirements? Third, assuming that he did, was the IAD clock tolled while he awaited the resolution of the Stanislaus County charges? The Court addresses each in turn.

### 1. Applicability of the IAD

Mr. Taylor's argument fails on the threshold question. The IAD did not apply while he was jailed in Stanislaus County from September 2023 to December 2024 because he had not "entered upon a term of imprisonment." *See* IAD art. III(a). Courts are unambiguous that the IAD does not cover pretrial detainees. *United States v. Reed*, 620 F.2d 709, 711 (9th Cir. 1980). It is true that Mr. Taylor had a somewhat hybrid status while in Stanislaus County—sentenced on some state charges while pending trial on others—and he argues that he could invoke the IAD as soon as he received his first sentence, in June 2023. But that interpretation conflicts with both the text and purpose of the IAD.

The parties have not cited, and the Court has not found, any Ninth Circuit precedent squarely on point for this situation. But the District Court for the District of Columbia considered the issue in *Murray v. District of Columbia*, 826 F. Supp. 4 (D.D.C. 1993). There, the defendant had a detainer in Massachusetts while he faced three sets of charges in D.C., and he tried to argue that the IAD's 180-day clock began to run after his first D.C. sentencing. The district court rejected that argument because he was not a prisoner within the meaning of Article III(a) due to

the other pending D.C. charges. *Id.* at 8. That is precisely the situation here, and this Court reaches the same conclusion.

Mr. Taylor's pretrial status for the entire period from June 2023 to December 2024 distinguishes this case from *United States v. Collins*, 90 F.3d 1420 (9th Cir. 1996). There, the defendant was incarcerated at a California prison on final state charges when he requested disposition of charges in the Eastern District of California. *Id.* at 1425-26. Around the same time, he also faced new state charges. *Id.* at 1426. The federal government obtained a writ of habeas corpus *ad prosequendum*, but the defendant was first transported for the new state criminal proceedings, which took a total of 17 days. *Id.* As a result, the question in *Collins* was the tolling of the IAD clock, not whether the defendant had "entered upon a term of imprisonment." *See id.* at 1426-27. The latter was not in dispute because the defendant was in prison unambiguously serving his first sentence before proceedings began for the second state case. *Id.* at 1426. Here, in contrast, Mr. Taylor was quickly transferred from pretrial detention in San Joaquin County to pretrial detention in Stanislaus County. Although he had received a prison sentence at that point, he had not "entered upon" that sentence for purposes of the IAD.

This interpretation is bolstered by another section of the IAD: the anti-shuttling provision. This facet of the IAD protects prisoners from excessive transfers. Thus, "[i]f trial is not had on any indictment . . . contemplated hereby

prior to the prisoner's being returned to the original place of imprisonment" that indictment must be dismissed with prejudice. IAD art. IV(e). In other words, the IAD is violated "when a prisoner . . . is (1) transferred to the receiving state based on its lodging a detainer against him and requesting custody, and then (2) returned to the 'original place of imprisonment' before standing trial on the untried indictment." *Pursley*, 474 F.3d at 762 (quoting IAD art. IV(e)).

If Mr. Taylor's argument were correct, his "original place of imprisonment" would be the Stanislaus County Jail because he "entered upon" his term of imprisonment there following pretrial detention in San Joaquin County. As a result, if he were transferred to the District of Idaho, the District could not transport him back to Stanislaus County until after he stood trial here, a process that could take months or longer depending on the number of pretrial issues and continuances. During that entire period, Stanislaus County would be unable to proceed with its attempted murder case, even though that indictment was filed prior to the indictment in the District of Idaho. This is a patently unworkable system that contradicts the goals of the IAD. States and the federal government adopted the agreement to encourage the prompt resolution of detainers, not to allow inmates to unilaterally dictate the order by which the charges against them are resolved.

In short, Mr. Taylor had not "entered upon a term of imprisonment" from September 2023 to December 2024, so he was not protected by the IAD.

## 2. Invocation of the IAD

The above analysis necessitates the denial of Mr. Taylor's motion to dismiss. Separately, the Court concludes that even if the IAD did apply, Mr. Taylor did not comply with its procedural requirements.

The IAD provides that a prisoner submitting a request for final disposition to the receiving jurisdiction must include "a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held" and other information about the sentence. IAD art. III(a). Mr. Taylor acknowledges that his letter to the Court, which he sent from the San Joaquin County Jail, did not include this certificate. But he argues that he did all he could to obtain the certificate, and he should not be held responsible for jail officials' refusal to comply. *See United States v. Smith*, 696 F. Supp. 1381, 1384 (D. Oregon 1988) ("Compliance with Art. III(b) requires everything that a prison inmate can reasonably be expected to do in attempting to cause delivery of the certificate of inmate status as required by Art. III(a).").

Under some circumstances the Court would be sympathetic to that argument. Mr. Taylor, however, admits that he did not try to obtain the certificate from officials at the Stanislaus County Jail, or otherwise request disposition of his District of Idaho case after being transferred to that facility. This alone suggests that he did not do everything he could "reasonably be expected to do" to cause the

delivery of the certificate. *See id.* The shortcoming is even less excusable because Mr. Taylor's interpretation of the IAD suggests that he was a pretrial detainee in San Joaquin County and then began his term of imprisonment in Stanislaus County while awaiting the resolution of separate charges. Thus, the San Joaquin County Jail officials were not the ones responsible for submitting the certificate, which likely explains why they refused to do so. Mr. Taylor's failure to follow the IAD's procedural requirements provides an independent basis for denying his motion.

### 3. Tolling of the IAD Clock

Assuming *in arguendo* that the IAD applied and that the time period began running with Mr. Taylor's August 2023 letter, there is a reasonable argument that the clock tolled for most or all of the period from September 2023 to December 2024 due to the Stanislaus County proceedings. Under Article IV(a) of the IAD, "the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction over the matter." The Ninth Circuit has held that the standard for tolling the IAD clock mirrors that of the Speedy Trial Act. *Collins*, 90 F.3d at 1427. The Speedy Trial Act, in turn, tolls the clock for any "delay resulting from any proceeding," including other trials. 18 U.S.C. § 3161(h)(1)(H). This suggests that the IAD clock tolled while Mr. Taylor awaited trial in Stanislaus County, but the record of those proceedings is not sufficiently developed for the Court to reach a firm conclusion.

The Court will set aside that question and deny Mr. Taylor's motion for the two reasons outlined above.

## ORDER

**THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Dkt. 169) is **DENIED**.

DATED: October 17, 2025

B. Lynn Winmill
U.S. District Court Judge